IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| COMERICA BANK | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) FILED: SEPTEMBER 2, 2008 |
| HUMIDORS BY AROL, LTD. a/k/a | ) 08CV4996 |
| KITCHEN DOCTORS, LTD., ARTHUR | ) JUDGE LEFKOW |
| W. KRAFT II, and CAROL A. KRAFT | ) MAGISTRATE JUDGE BROWN |
| | ) |
| Defendants. | ) |
| | ) PH |

**COMPLAINT FOR BREACH OF CONTRACT**

NOW COMES Comerica Bank ("Comerica"), Plaintiff herein, by and through its attorney, Kurt M. Carlson of Tishler & Wald, Ltd., and for its Complaint for Breach of Contract against Humidors by Arol, Ltd. a/k/a Kitchen Doctors, Ltd. ("Borrower" or "Humidors"), Arthur W. Kraft II ("Arthur Kraft"), and Carol A. Kraft ("Carol Kraft"), Defendants herein, respectfully states as follows:

**Parties and Jurisdiction**

1.     Plaintiff, Comerica Bank, is a Texas banking corporation, with its principal place of business at 1717 Main Street, Dallas, Texas 75201.

2.     Defendant, Humidors by Arol, Ltd., is an Illinois corporation whose principal place of business is 1426 W. Galena Blvd., Aurora, IL 60506.  Humidors by Arol, Ltd. is also known as Kitchen Doctors, Ltd.

1

3. Defendant, Arthur Kraft, is an individual whose principal residence is 8801 Van Emmon Rd., Yorkville, IL 60560 and who upon information and belief may also reside at 1426 West Galena Blvd., Aurora, IL.

4. Defendant, Carol Kraft, is an individual whose principal residence is 8801 Van Emmon Rd., Yorkville, IL 60560 and who upon information and belief may also reside at 1426 West Galena Blvd., Aurora, IL.

5. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

6. Venue and jurisdiction are proper in this district.

### Count I—Breach of Contract—Promissory Note

7. Plaintiff incorporates by reference the allegations of Paragraphs 1 through 5 of this Complaint as though fully restated here in their entirety.

8. On or about November 3, 2004, Arthur Kraft, in his capacity as President of Borrower, and Carol Kraft, in her capacity as Vice President of Borrower, executed a Promissory Note in favor of Comerica on behalf of Borrower, in the original principal amount of $142,200.00. A copy of the Promissory Note is attached hereto as **Exhibit A** and made a part hereof.

8. The Borrower has defaulted under the terms of the Promissory Note.

9. Due and owing under the Promissory Note, as of June 19, 2008, is the sum of $121,301.87 plus additional interest, costs and attorneys' fees.

10. Despite demand, the Borrower has failed to pay the amount due and owing under the terms of the Promissory Note.

WHEREFORE, Comerica requests the entry of Judgment in its favor and against Humidors by Arol, Ltd., Borrower and Defendant herein, in the amount of $121,301.87 plus additional interest, costs and attorneys' fees and for any other and further relief this Court deems appropriate.

### Count II – Breach of Contract--Guaranty of Arthur Kraft

11.  Plaintiff incorporates by reference the allegations of Paragraphs 1 through 10 of this Complaint as though fully restated here in their entirety.

12.  On or about November 3, 2004, Arthur executed an unlimited, continuing, Unconditional Guaranty in favor of Comerica, guaranteeing payment to Comerica of all indebtedness of Borrower to Comerica ("Arthur Kraft Guaranty").  A copy of the Guaranty is attached hereto as **Exhibit B** and made a part hereof.

13.  Borrower had defaulted under the terms of the Promissory Note.

14.  Despite demand, Arthur has failed to make payment under the Arthur Kraft Guaranty.

15.  Due and owing under the Arthur Kraft Guaranty is the sum of $121,301.87, as of June 19, 2008, plus additional interest, costs and attorneys' fees.

WHEREFORE, Comerica requests the entry of Judgment in its favor and against Arthur Kraft in the amount of $121,301.87 plus additional interest, costs and attorneys' fees and for any other and further relief this Court deems appropriate.

### Count III – Breach of Contract--Guaranty of Carol Kraft

16.  Plaintiff incorporates by reference the allegations of Paragraphs 1 through 15 of this Complaint as though fully restated here in their entirety.

17. On or about November 3, 2004, Carol executed an unlimited, continuing Unconditional Guaranty in favor of Comerica, guaranteeing payment to Comerica of all indebtedness of Borrower to Comerica ("Carol Kraft Guaranty"). A copy of the Guaranty is attached hereto as **Exhibit C** and made a part hereof.

18. Borrower has defaulted under the terms of the Promissory Note.

19. Despite demand, Carol Kraft has failed to make payment under the Carol Kraft Guaranty.

20. Due and owed under the Carol Kraft Guaranty is the sum of $121,301.87, as of June 19, 2008, plus additional interest, costs and attorneys' fees.

WHEREFORE, Comerica requests the entry of Judgment in its favor and against Carol Kraft in the amount of $121,301.87 plus additional interest, costs and attorneys' fees and for any other and further relief this Court deems appropriate.

Date: September 2, 2008

Respectfully submitted,

COMERICA BANK

By: /s/ Kurt M. Carlson
    One of Its Attorneys

Kurt M. Carlson (6236568)
TISHLER & WALD, LTD.
200 S. Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 876-3800
kcarlson@tishlerandwald.com

4



U.S. Small Business Administration<sup>PH</sup>

# NOTE

| SBA Loan # | PLP 796-354-4009 |
| --- | --- |
| SBA Loan Name | HUMIDORS BY AROL, Ltd. |
| Date | _11/03_, 2004 |
| Loan Amount | $142,200.00 |
| Interest Rate | WALL STREET JOURNAL PRIME RATE + 2.25% PER ANNUM |
| Borrower | HUMIDORS BY AROL, Ltd. |
| Operating Company | N/A |
| Lender | COMERICA BANK |

1. PROMISE TO PAY:

   In return for the Loan, Borrower promises to pay to the order of Lender the amount of
   ONE HUNDRED FORTY TWO THOUSAND TWO HUNDRED AND 00/100 ($142,200.00) Dollars,
   interest on the unpaid principal balance, and all other amounts required by this Note.

2. DEFINITIONS:

   "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

   "Guarantor" means each person or entity that signs a guarantee of payment of this Note.

   "Loan" means the loan evidenced by this Note.

   "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

EXHIBIT A

3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

A. NOTE TERMS:

1. Maturity: This Note will mature in 10 years from date of initial disbursement.

2. Repayment Terms: Lender must insert onto SBA Note, Form 147, to be executed by Borrower, the following terms, without modification. Lender must complete all blank terms on the Note at time of closing:
The interest rate on this Note will fluctuate. The initial interest rate is 7.00% per year. This initial rate is the prime rate on the date SBA received the loan application, plus 2.25%. The initial interest rate must remain in effect until the first change period begins.

Borrower must pay interest on the disbursed principal balance, plus principal of $1,652.00 every month, beginning one month from the month of initial disbursement on this Note; payments must be made on the same day as the date of initial disbursement on this Note in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period").

The "Prime Rate" is the prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in the Wall Street Journal on the next business day.

The adjusted interest rate will be 2.25% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Loan Prepayment:
Notwithstanding any provision in this Note to the contrary:
Borrower may prepay this Note. Borrower may prepay 20% or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20% and the Loan has been sold on the secondary market, Borrower must:
a. Give Lender written notice;
b. Pay all accrued interest; and
c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years from date of initial disbursement.

Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

4. DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A. Fails to do anything required by this Note and other Loan Documents;
B. Defaults on any other loan with Lender;
C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;
D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;
E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;
F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;
G. Fails to pay any taxes when due;
H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;
I. Has a receiver or liquidator appointed for any part of their business or property;
J. Makes an assignment for the benefit of creditors;
K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;
L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or
M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;
B. Collect all amounts owing from any Borrower or Guarantor;
C. File suit and obtain judgment;
D. Take possession of any Collateral; or
E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;
B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;
C. Release anyone obligated to pay this Note;
D. Compromise, release, renew, extend or substitute any of the Collateral; and
E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

   A. All individuals and entities signing this Note are jointly and severally liable.
   B. Borrower waives all suretyship defenses.
   C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.
   D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.
   E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.
   F. If any part of this Note is unenforceable, all other parts remain in effect.
   G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. STATE-SPECIFIC PROVISIONS:

None.

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

BORROWER:

HUMIDORS BY AROL, Ltd.

_[signature]_
By: Arthur W. Kraft, II
Its: President

_[signature]_
By: Carol A. Kraft
Its: Vice President

PH

**U.S. Small Business Administration**

# UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP 796-354-4009 |
|---|---|
| SBA Loan Name | HUMIDORS BY AROL, Ltd. |
| Guarantor | ARTHUR W. KRAFT, II |
| Borrower | HUMIDORS BY AROL, Ltd. |
| Lender | COMERICA BANK |
| Date | Nov 3, 2004 |
| Note Amount | $142,200.00 |

1. GUARANTEE:

   Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

   The "Note" is the promissory note dated _____, 2004 in the principal amount of ONE HUNDRED FORTY TWO THOUSAND TWO HUNDRED AND 00/100 ($142,200.00) Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

   "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

   "Loan" means the loan evidenced by the Note.

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

SBA Form 148 (10/98) Previous editions obsolete.                                Page 1/5

**EXHIBIT B**

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
B. Refrain from taking any action on the Note, the Collateral, or any guarantee;
C. Release any Borrower or any guarantor of the Note;
D. Compromise or settle with the Borrower or any guarantor of the Note;
E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;
F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;
G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and
H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:
   1) Require presentment, protest, or demand upon Borrower;
   2) Redeem any Collateral before or after Lender disposes of it;
   3) Have any disposition of Collateral advertised; and
   4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:
   1) Any default under the Note;
   2) Presentment, dishonor, protest, or demand;
   3) Execution of the Note;
   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5) Any change in the financial condition or business operations of Borrower or any guarantor;
   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:
   1) Lender failed to obtain any guarantee;
   2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3) Lender or others improperly valued or inspected the Collateral;
   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

    5) Lender impaired the Collateral;
    6) Lender did not dispose of any of the Collateral;
    7) Lender did not conduct a commercially reasonable sale;
    8) Lender did not obtain the fair market value of the Collateral;
    9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
    10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
    11) Lender made errors or omissions in Loan Documents or administration of the Loan;
    12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:
    13) Lender impaired Guarantor's suretyship rights;
    14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
    15) Borrower has avoided liability on the Note; or
    16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. **DUTIES AS TO COLLATERAL:**

   Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS:**

   Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. **GENERAL PROVISIONS:**

   A. **ENFORCEMENT EXPENSES.** Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

   B. **SBA NOT A CO-GUARANTOR.** Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

   C. **SUBROGATION RIGHTS.** Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

   D. **JOINT AND SEVERAL LIABILITY.** All individuals and entities signing as Guarantor are jointly and severally liable.

   E. **DOCUMENT SIGNING.** Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

   F. **FINANCIAL STATEMENTS.** Guarantor must give Lender financial statements as Lender requires.

   G. **LENDER'S RIGHTS CUMULATIVE, NOT WAIVED.** Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

   H. **ORAL STATEMENTS NOT BINDING.** Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

   I. **SEVERABILITY.** If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

   J. **CONSIDERATION.** The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

NONE.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

   Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

   By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

   GUARANTOR:

   _____
   ARTHUR W. KRAFT, II

   Subscribed and sworn to before me this __1/04__ day of _____, 2004, by Arthur W. Kraft, II.

   "OFFICIAL SEAL"
   Lisa Marie Hribal
   Notary Public, State of Illinois
   My Commission Exp. 09/22/2007

   _____, Notary Public
   __Kane__ County, Illinois
   My Commission Expires: __9/22/07__



PH
U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP 796-354-4009 |
|---|---|
| SBA Loan Name | HUMIDORS BY AROL, Ltd. |
| Guarantor | CAROL A. KRAFT |
| Borrower | HUMIDORS BY AROL, Ltd. |
| Lender | COMERICA BANK |
| Date | 11/03, 2004 |
| Note Amount | $142,200.00 |

1. GUARANTEE:

    Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

    The "Note" is the promissory note dated _____11/03_____, 2004 in the principal amount of _____ONE HUNDRED FORTY TWO THOUSAND TWO HUNDRED AND 00/100 ($142,200.00)_____ Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

    "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

    "Loan" means the loan evidenced by the Note.

    "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

EXHIBIT C

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:
   1) Require presentment, protest, or demand upon Borrower;
   2) Redeem any Collateral before or after Lender disposes of it;
   3) Have any disposition of Collateral advertised; and
   4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:
   1) Any default under the Note;
   2) Presentment, dishonor, protest, or demand;
   3) Execution of the Note;
   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5) Any change in the financial condition or business operations of Borrower or any guarantor;
   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:
   1) Lender failed to obtain any guarantee;
   2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3) Lender or others improperly valued or inspected the Collateral;
   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

    5) Lender impaired the Collateral;
    6) Lender did not dispose of any of the Collateral;
    7) Lender did not conduct a commercially reasonable sale;
    8) Lender did not obtain the fair market value of the Collateral;
    9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
    10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
    11) Lender made errors or omissions in Loan Documents or administration of the Loan;
    12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
    13) Lender impaired Guarantor's suretyship rights;
    14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
    15) Borrower has avoided liability on the Note; or
    16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

    A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

    B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

    C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

    D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

    E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

    F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

    G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

    H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

    I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

    J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

NONE.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

　　Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

　　By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

_____
CAROL A. KRAFT

Subscribed and sworn to before me this __3__ day of __November__, 2004, by Carol A. Kraft.

"OFFICIAL SEAL"
Lisa Marie Hribal
Notary Public, State of Illinois
My Commission Exp. 09/22/2007

_____, Notary Public
Lisa Marie Hribal
Kane County, Illinois
My Commission Expires: 9/22/07